1   Joseph J. Tabacco, Jr., Esq. (SBN 75484)
    (jtabacco@bermandevalerio.com)
2   Christopher T. Heffelfinger, Esq. (SBN 118058)
    (cheffelfinger@bermandevalerio.com)
3   Anthony D. Phillips (SBN 259688)
    (aphillips@bermandevalerio.com)
4   **BERMAN DEVALERIO**
    One California Street, Suite 900
5   San Francisco, California  94111
    Telephone:  415.433.3200
6   Facsimile:  415.433.6382

7   Judd B. Grossman, Esq. (pro hac vice)
    (jgrossman@grossmanllp.com)
8   **GROSSMAN LLP**
    590 Madison Avenue, Suite 1800
9   New York, New York  10022
    Telephone:  646.770.7445
10  Facsimile:  212.521.4044

11  Attorneys for Plaintiff ROBERT HERSKOWITZ

12  Patrick J. Perotti (pro hac vice)
    (pperotti@dworkenlaw.com)
13  Michael R. Rudick (pro hac vice)
    (mrudick@dworkenlaw.com)
14  **DWORKEN & BERNSTEIN CO., L.P.A.**
    60 South Park Place
15  Painesville, Ohio  44077
    Telephone:  440.352.3391
16  Facsimile:  440.352.3469

17  Attorneys for Plaintiff PHOEBE JUEL

18  [*Additional Counsel on Signature Page*]

19              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
20                    **San Jose Division**

21  ROBERT HERSKOWITZ, individually and
    on behalf of all others similarly situated,        Lead Case No. 12-CV-02131-LHK
22
                                    Plaintiff,          Consolidated with:
23                          v.                          Case No. 12-CV-03124-LHK
    APPLE INC.,
24                                  Defendant.          **PLAINTIFFS' FIRST AMENDED
    _____                CONSOLIDATED CLASS
25                                                     ACTION COMPLAINT**
    PHOEBE JUEL, individually and on behalf
26  of all others similarly situated,                  **CLASS ACTION**

27                                  Plaintiff,          **DEMAND FOR JURY TRIAL**
                            v.
28  APPLE INC.,
                                    Defendant.

Plaintiffs Robert Herskowitz and Phoebe Juel ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, and pursuant to this Court's November 2, 2012 Order Consolidating Cases, state as follows upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, which will likely have evidentiary support after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.      Plaintiffs have filed this nationwide putative class action for damages and injunctive relief against Apple because Apple routinely—and unlawfully—charges its "e-Stores" customers more than once for the same products and services in violation of the customer agreements governing those transactions, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and California common law.

2.      Apple's practice of billing customers more than once for the same purchased products takes three basic forms: (1) Apple double bills the customer for a single product at the time of purchase; (2) Apple refuses to allow the customer to download for free an already purchased product despite the fact that the customer has not downloaded the product more times than the contractually specified limit; and (3) Apple prevents customers from accessing, storing, transferring or managing already purchased products, causing customers to lose purchased products and requiring customers to re-purchase the products at an additional charge.

3.      Apple is a multinational corporation that designs and sells consumer electronics, computer software, and personal computers. It is the largest publicly traded company in the world by market capitalization, and the largest technology company in the world by revenue and profit, worth more than Google and Microsoft combined.

4.      Apple's hardware products include the iPhone, the iPad, the iPod Touch, and the Mac personal computer. Apple customers can purchase products and services ("Product" or "Products"), such as apps, songs, videos, games, and books for use on these and other devices

through the App Store, the iTunes Store, the iBookstore, and the Mac App Store (collectively, the "Apple Stores" or the "e-Stores").

5.　　Customers' use of the Apple Stores is governed by Apple's standard "Terms and Conditions" (the "Agreement").  The Agreement is a "click-through" agreement:  it was drafted by Apple, it cannot be modified by the customer, and it is offered on a "take it or leave it" basis.

6.　　Under the Agreement, as with any consumer transaction, customers are to be billed only once for Products they purchase.  Apple, however, has charged customers more than once for the same Product.  What is more, Apple has implemented a policy and practice of refusing to refund the extra charge to customers who have been double-billed, causing their credit cards or PayPal accounts to be billed twice for a single Product.

7.　　On or about December 2, 2010, Plaintiff Herskowitz was charged twice for purchasing a single song.  When Mr. Herskowitz brought this overcharge to Apple's attention, Apple told him that it would not refund the overcharge based on its purported no-refund policy:

> Your request for a refund for "Whataya Want from Me" was carefully considered; however, according to the iTunes Store Terms of Sale, all purchases made on the iTunes Store are ineligible for refund. This policy matches Apple's refund policies and provides protection for copyrighted materials.

Apple has sent identical responses to countless other customers who have complained of being charged more than once for the same Products.  But the Agreement governing the "use of" the Apple Stores says no such thing.

8.　　Apple's policy and/or practice of charging customers more than once for the same Product and refusing to refund payments made by customers who have been charged more than once for the same Product violate the terms of the Agreement and California statutory and common law.

9.　　Apple also has adopted a policy and practice of refusing to allow customers to access Products that they previously purchased from the Apple Stores and then charging those customers a second time after the original download for re-downloading the same Product.  This policy is contrary to the terms of the Agreement providing that personal and

noncommercial customers are entitled to keep and utilize the Products they purchase from the Apple Stores for as long as they wish.[1]  In fact, to ensure that Apple customers have portability of their digital content, customers are "authorized to use Product on five Apple-authorized devices at any time,"[2] and "store Product from up to five different Accounts at a time on compatible devices."[3]

10.    Plaintiff Phoebe Juel and countless others are victims of this policy.   On December 31, 2010, Ms. Juel purchased and downloaded a song from the Apple Stores pursuant to the Agreement.  She later tried to access the song but could not.  When she downloaded it again, even though Apple's records showed she had already purchased the song, Apple charged her a second time for the same Product.

11.    Apple's practice and policy of refusing to allow customers to access and/or download Products previously purchased from the Apple Stores, without being charged for the same Product a second time, violates the terms of the Agreement and California common law.

12.    Accordingly, Plaintiffs Herskowitz and Juel seek to maintain this nationwide class action to:  (1) recover damages for all customers who have been charged more than once for the same Product; (2) obtain equitable relief enjoining Apple from billing customers more than once for the same Products and enforcing its purported "no-refund" policy; and  (3) obtain equitable relief enjoining Apple from charging customers a second time for downloading Products the customers already have purchased.

## PARTIES

13.    Plaintiff Robert Herskowitz is an individual and resident of the State of New York.

14.    Plaintiff Phoebe Juel is an individual and resident of the State of Pennsylvania.

15.    Defendant Apple is a California corporation with its principal place of business located in Cupertino, California.

---

[1] http://www.apple.com/legal/itunes/us/terms.html (last viewed Nov. 14, 2012).

[2] *Id.*

[3] *Id.*

1

**JURISDICTION AND VENUE**

2  16. This Court has jurisdiction over Apple because:  (1) Apple's principal place of

3 business is in Cupertino, California, which is in the Northern District of California; (2) Apple

4 conducts substantial business in the State of California; and (3) Apple has sufficient minimum

5 contacts with California, or otherwise intentionally avails itself of the markets within

6 California.

7  17. This Court has original jurisdiction over all claims in this action under the Class

8 Action Fairness Act, 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum

9 or value of $5 million, in the aggregate, exclusive of interest and costs, and this is a putative

10 class action involving at least one hundred members in the proposed class and Plaintiffs are not

11 citizens of the same State as Apple.

12  18. Venue is proper in this District under 28 U.S.C. § 1391(b) because the acts upon

13 which this action is based occurred in part in this District.  Apple received substantial

14 compensation and profits from the sale of its Product and services in this District, and Apple

15 entered into agreements and transactions and/or breached agreements in this District.  Thus,

16 Apple's liability arose, in part, in this District.

17

**FACTUAL ALLEGATIONS**

18 Apple and the e-Stores

19  19. Apple is a multinational corporation that designs and sells consumer electronics,

20 computer software, and personal computers.  Apple's hardware devices include the Mac

21 personal computer, the iPhone, the iPad, and the iPod Touch.

22  20. Through the iTunes media browser, which Apple describes as "a free

23 application" that "lets you organize and play digital music and video on your computer,"

24 customers can purchase music, videos, and songs, among other things, from the "iTunes Store,"

25 a software-based online digital-media store operated by Apple.  Launched on or about April

26 2003, the iTunes Store has over 200,000 items to purchase, making it the number-one music

27 vendor in the United States.

28

21.    On July 10, 2008, Apple launched its "App Store," a digital-application distribution platform developed and maintained by Apple that allows users to browse and purchase applications (commonly referred to as "apps").  The App Store offers more than 600,000 apps for iPhones, iPads, and iPod Touch devices.  By July 2011, Apple customers had downloaded over 15 billion apps from the App Store, and the App Store has already generated billions of dollars in revenue for Apple and its developers.

22.    On January 6, 2011, Apple launched the Mac App Store, allowing customers to purchase and download applications for personal Mac computers.  According to Apple, "[t]he Mac App Store is just like the App Store for iPhone, iPod touch, and iPad."  Within twenty-four hours of the Mac App Store's release, Apple announced that customers had downloaded more than 1 million applications from the Mac App Store.

23.    Apple's iBookstore is part of iBooks, Apple's e-book application allowing customers to download and read books on the iPhone, the iPad, and the iPod Touch. From the iBookstore, customers can browse "700,000 books and counting" by title, author, or genre, and view featured books available on the New York Times bestseller lists.

The Agreement

24.    The "use of the" Apple Stores is governed in every case by Apple's standard "Terms and Conditions":

> THE LEGAL AGREEMENTS SET OUT BELOW GOVERN YOUR USE OF THE ITUNES STORE, MAC APP STORE, APP STORE, AND IBOOKSTORE SERVICES. TO AGREE TO THESE TERMS, CLICK "AGREE." IF YOU DO NOT AGREE TO THESE TERMS, DO NOT CLICK "AGREE," AND DO NOT USE THESE SERVICES.

http://www.apple.com/legal/itunes/us/terms.html (last viewed Nov. 14, 2012).

25.    Customers cannot purchase Products through the Apple Stores without agreeing to these Terms and Conditions.  Accordingly, every customer, including Plaintiffs Herskowitz and Juel, entered into the Agreement with Apple prior to using the Apple Stores to purchase Products.

26.     Under the Agreement, as with any consumer transaction, Apple may only charge customers once "for any products purchased and for any additional amounts (including any taxes and late fees, as applicable) that may be accrued by or in connection with your Account."

27.     Apple's "refund policy," as stated in the Agreement, provides only that the Apple Stores "do not provide price protection or refunds in the event of a price reduction or promotional offering."  Accordingly, by its own terms, Apple's "no refund" policy is limited to "the event of a price reduction or promotional offering."

28.     The Agreement contains a California choice-of-law provision:  "All transactions . . . are governed by California law, without giving effect to its conflict of law provisions. . . .  Risk of loss and title for all electronically delivered transactions pass to the purchaser in California upon electronic transmission to the recipient."

<u>Apple Double Bills Customers for the Same Products (Subclass A)</u>

29.     With troubling regularity, Apple has double-billed customers for purchases of Products made through the Apple Stores.  In those cases, when a customer purchases a song, movie, or book, Apple bills that customer more than once for the same download.

30.     Upon information and belief, one of the most frequent complaints made by e-Stores customers to Apple is that they have been charged more than once for a single Product.

31.     Apple, however, has effectuated a policy and practice of refusing to refund the extra charges to customers whom it has double-billed.

32.     On or about December 2, 2010, Plaintiff Herskowitz purchased twenty-two songs from the iTunes Store.  However, Apple double-billed Mr. Herskowitz for one of his selections, a "pop" song entitled, "Whataya Want from Me."  In other words, Apple billed Mr. Herskowitz a total of $2.58 for a song that cost $1.29 to download.

33.     Later that same day, December 2, 2010, Plaintiff Herskowitz reported the double-billing to Apple, generating an automated message stating an iTunes representative is "reviewing your request and will send you a personal response soon."

34.     On December 3, 2010, Apple e-mailed Plaintiff Herskowitz denying his request for a refund based on its purported no-refund policy:

> Your request for a refund for "Whataya Want from Me" was carefully considered; however, according to the iTunes Store Terms of Sale, all purchases made on the iTunes Store are ineligible for refund. This policy matches Apple's refund policies and provides protection for copyrighted materials.

Apple has sent identical responses to countless other customers who have complained of being charged more than once for the same Products. This is the sole explanation that Apple offered to Mr. Herskowitz for denying a refund; Apple never communicated to Mr. Herskowitz at any point that it denied a refund because its records showed that Plaintiff intentionally purchased the song more than once.

35.     Mr. Herskowitz is not the only customer in the United States to have been double-billed and then denied a refund by Apple based on its purported "no-refund policy." Apple's policy has resulted in a substantial number of Apple Store's 50 million U.S. customers—approximately one quarter of the country's internet users—being double-billed by Apple for a single Product.

Apple Double Bills Customers Who Re-download Products They Cannot Access (Subclass B)

36.     Another key aspect of the Agreement is that Apple customers are entitled to keep and utilize Products they purchase from the Apple Stores for as long as they wish, so long as they do so "for personal, noncommercial" purposes. Indeed, to ensure that Apple customers have portability of their Products, customers are "authorized to use Products on five Apple-authorized devices at any time," and "store Product from up to five different Accounts at a time on compatible devices."

37.     Apple has computerized records for each customer, detailing the Products purchased, the number of devices authorized by Apple for use of a Product, the number of Accounts on which the Product is stored, and all amounts charged for each Product.

38.     For example, after an Apple customer purchases a song he or she can store it on an iPod, a home computer, an office computer, an iPhone, and a vacation home computer. The "portability" of the music is a key aspect of the purchase, as it is necessary to ensure that Apple's customers are able to enjoy their purchased digital content wherever they go, and on whichever devices they authorize.

39.     In fact, Apple has made repeated and consistent public material representations to the general public about the manner in which Products (songs, in particular) can be put on multiple devices:

"The iTunes Music Store offers the revolutionary rights to burn an unlimited number of CDs for personal use and to put music on an unlimited number of iPods for on-the-go listening," said Steve Jobs.[4]

Songs are downloaded in pristine digital quality and can be burned onto an unlimited number of CDs for personal use, played on up to three Macintosh computers, listened to on an unlimited number of iPods, and used in other Mac applications, including iPhoto, iMovie and iDVD.[5]

The iTunes Music Store offers groundbreaking personal use rights that allow users to burn songs onto an unlimited number of CDs for personal use, listen to songs on an unlimited number of iPods, play songs on up to three Macintosh® computers, and use songs in other applications on the Mac®, including iPhoto™, iMovie™ and iDVD™.[6]

Songs can be burned at no extra cost onto an unlimited number of CDs for personal use, played on up to three computers, and listened to on an unlimited number of iPods.[7]

The iTunes Music Store gives users the ability to play songs on up to five personal computers, burn a song onto CDs an unlimited number of times, burn the same playlist up to seven times and listen to their music on an unlimited number of iPods.[8]

The iTunes Music Store, available in the US, UK, France and Germany, is the best way for PC and Mac® users to legally discover, purchase and download music online. Incorporating pioneering features, unmatched personal use rights, breakthrough pricing and Apple's legendary ease of use, the iTunes Music Store gives users the ability to play songs on up to five personal computers, burn a song onto CDs an unlimited number of times, burn the same playlist up to seven times and listen to their music on an unlimited number of iPods. With 125 million song downloads to date and a 70% market share of the legal digital music market, the iTunes Music Store is the leading online music destination in the world.[9]

The iTunes Music Store gives users the ability to play songs on up to five personal computers, burn a song onto CDs an unlimited number of times, burn the

---

[4] http://www.apple.com/pr/library/2003/apr/28musicstore.html (last viewed Nov. 14, 2012).

[5] http://www.apple.com/pr/library/2003/may/14musicstore.html (last viewed Nov. 14, 2012).

[6] http://www.apple.com/pr/library/2003/may/05musicstore.html (last viewed Nov. 14, 2012).

[7] http://www.apple.com/pr/library/2003/sep/08musicstore.html (last viewed Nov. 14, 2012).

[8] http://www.apple.com/pr/library/2004/oct/14itunes.html (last viewed Nov. 14, 2012).

[9] http://www.apple.com/pr/library/2004/sep/01itunesaffiliate.html (last viewed Nov. 14, 2012).

same playlist up to seven times and listen to their music on an unlimited number of iPods.[10]

The third generation iTunes Music Store features the industry's largest online music catalog of over 700,000 songs from all five major music companies and over 450 independent music labels, as well as groundbreaking new features including: The rights to play songs purchased from the iTunes Music Store, including songs previously purchased, on up to five personal computers, two more than before.[11]

All iTunes Music Stores feature the same groundbreaking personal use rights, giving users the ability to play songs on up to five personal computers, burn a single song onto CDs an unlimited number of times, burn the same playlist up to seven times and listen to their music on an unlimited number of iPods.[12]

With DRM-free music from the EMI catalog, iTunes customers will have the ability to download tracks from their favorite EMI artists without any usage restrictions that limit the types of devices or number of computers that purchased songs can be played on.[13]

With the expansion of iTunes Plus, customers can now download tracks from a variety of labels without limitations on the type of music player or number of computers that purchased songs can be played on.[14]

With the release of iTunes Plus, customers can now download tracks from their favorite EMI artists without limitations on the type of music player or number of computers that purchased songs can be played on.[15]

iTunes 9 also introduces Home Sharing, which lets you easily transfer music, movies and TV shows among up to five authorized computers in your home. Family members can now view up to five iTunes libraries on their home network, see only the portion of these libraries they don't already have, import their favorite content directly to their own libraries, and automatically add new purchases from other computers into their library… syncing music, photos, movies and TV shows is easier than ever with the added ability to sync music by artist and genre and sync photos by Events and Faces.[16]

---

[10] http://www.apple.com/pr/library/2004/aug/10itms.html; repeated at http://www.apple.com/pr/library/2004/jul/21indie.html (last viewed Nov. 14, 2012).

[11] http://www.apple.com/pr/library/2004/may/05itunes.html; repeated at http://www.apple.com/pr/library/2004/apr/28itunes.html (last viewed Nov. 14, 2012).

[12] http://www.apple.com/pr/library/2005/mar/10blu-ray.html, repeated at http://www.apple.com/pr/library/2005/jun/02itms.html and http://www.apple.com/pr/library/2005/jun/23itunes.html (last viewed Nov. 14, 2012).

[13] http://www.apple.com/pr/library/2007/04/02itunes.html (last viewed Nov. 14, 2012).

[14] http://www.apple.com/pr/library/2007/10/17itunes.html (last viewed Nov. 14, 2012).

[15] http://www.apple.com/pr/library/2007/05/30itunesplus.html (last viewed Nov. 14, 2012).

[16] http://www.apple.com/pr/library/2009/09/09itunes.html (last viewed Nov. 14, 2012).

With just one click, they can purchase the songs they want and download them directly into their iTunes 4 music library for just 99 cents per song, without any subscription fees.[17]

The pioneering iTunes Music Store and the market-leading iPod™ digital music player, providing music lovers with a seamless experience for buying, managing and listening to their digital music collections anywhere.[18]

iTunes customers can also choose to download their favorite songs from the world's largest music catalog directly onto their iPhone™ 3G over their 3G network just as they do with Wi-Fi today, for the same price as downloading to their computer. And beginning in April, based on what the music labels charge Apple, songs on iTunes will be available at one of three price points: 69 cents, 99 cents and $1.29, with most albums still priced at $9.99."[19]

40.    Despite these material representations, Apple has refused to allow its customers to re-download Products already purchased from the Apple Stores, without being charged for the same Product a second time, even though the customer did not exceed the devices limit. This conduct is especially troubling in light of the fact that Apple's records specifically indicate that the customer had already purchased the Product and has not exceeded the limit.

41.    Upon information and belief, millions of Apple customers have been charged more than once for Products purchased from the Apple Stores.  Upon information and belief, one of the most frequent complaints made by e-Stores customers to Apple is that they were forced to repurchase the same Product.

42.    Upon information and belief, Apple has acknowledged that many Apple customers have been wrongly charged more than once for Products purchased from the Apple Stores, and Apple has attempted to implement corrective measures in response.

## CLASS ALLEGATIONS

43.    Plaintiffs Herskowitz and Juel reallege and incorporate herein all previous paragraphs of this First Amended Consolidated Class Action Complaint.

44.    Plaintiffs bring this purported class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all others similarly situated based on their own circumstances as

---

[17] http://www.apple.com/pr/library/2003/jun/23itunes.html (last viewed Nov. 14, 2012).

[18] http://www.apple.com/pr/library/2003/oct/20itunes.html (last viewed Nov. 14, 2012).

[19] http://www.apple.com/pr/library/2009/01/06itunes.html (last viewed Nov. 14, 2012).

representative members of the following proposed class (the "Class") and the subclasses hereinafter listed and defined:

> Class Definition:  All individuals or entities who purchased Products from the App Store, the iTunes Store, the iBookstore, and/or the Mac App Store and who were charged more than once and paid Defendant more than once for the same Product.

> Subclass A:  All individuals or entities who were charged at the time of purchase, and paid Apple, more than once for the same Product from the App Store, the iTunes Store, the iBookstore, and/or the Mac App Store.

> Subclass B:  All individuals or entities who purchased any Product from the App Store, the iTunes Store, the iBookstore, and/or the Mac App Store, paid for the Product, and were billed again for subsequently downloading the same Product.

45.     Specifically excluded from the proposed Class and each of the defined subclasses are the Court and its staff, Apple, any entity in which Apple has a controlling interest, and the officers, directors, affiliates, legal representatives, successors, subsidiaries, and/or assigns of any such entity.

46.     The proposed Class and the each of the defined subclasses meet all requirements for class certification.

**NUMEROSITY**

47.     The proposed Class and each of the defined subclasses are so numerous that the individual joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.  While the exact number and the identities of all Class members are unknown at this time and can only be ascertained through investigation and discovery in this action, Apple conducts business nationwide and, on information and belief, there currently are over 50 million Apple Store customers in the United States—approximately one quarter of the country's internet users.

**EXISTENCE AND PREDOMINANCE OF
COMMON QUESTIONS OF LAW AND FACT**

48.     The Agreement which controls each Class member's transaction provides identically for each that "[a]ll transactions on the Service are governed by California law,

without giving effect to its conflict of law provisions."[20]   As such, the law which controls claims by every Class Member is common and identical, so that the injuries and damages to Class members present questions of law and fact that are common to each Class member, and that are common to the entire Class as a whole.

49.    Plaintiffs seek common equitable relief, including declaratory, injunctive, restitutionary, and other equitable monetary relief, and common measures of economic, compensatory, exemplary, and/or statutory damages, as set forth more fully below.   This includes, but is not limited to, full credits for and/or repayment of the improper charges, or any other monies that were improperly required to be expended as a result of Apple's wrongdoing, plus interest thereon.

50.    The common questions of law and fact arising out of the claims here at issue exist as to all members of the Class and predominate over any potential individual issues. These common legal and factual questions include, but are not limited to, the following:

a.    Whether Apple breached the Agreement with its Apple Stores customers;

b.    Whether Apple engaged in a common, repeated practice of billing customers twice at the time of purchase for the same Product;

c.    Whether Apple's conduct of charging more than once for the download of an already purchased Product, where the customer had not exceeded their devices limit, is unlawful.

d.    Whether Apple improperly imposed certain charges that were not to be imposed upon the Class as it was either improper to do so or the charges were not authorized by the Class;

e.    The amount of revenues and profits Apple received and/or the amount of monies or other obligations imposed on or lost by the Class as a result of such wrongdoing;

---

[20] http://www.apple.com/legal/itunes/us/terms.html (last viewed Nov. 14, 2012).

f.    Whether Apple's course of conduct was unfair, unreasonable or unconscionable or constitutes acts of unfair competition, or misleading acts or practices;

g.    Whether Apple's course of conduct violates California's CLRA, Cal Civ. Code § 1750 *et seq.*, and/or California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*;

h.    Whether Apple owed and breached a duty of good faith and fair dealing to the Class with respect to the Agreement as determined by California law common to all Class members;

i.    Whether Apple was unjustly enriched under California law by its course of conduct towards the Class;

j.    Whether Apple committed fraud as determined under California law by its conduct towards the Class;

k.    Whether the Class is entitled to injunctive and other equitable relief; and

l.    Whether the Class is entitled to payment of equitable monetary relief, actual, incidental, consequential, exemplary, and/or statutory damages, plus interest thereon.

## **TYPICALITY OF CLAIMS**

51.    Plaintiffs' claims are typical of the claims of the Class, including Subclass A and Subclass B.  Plaintiffs Herskowitz and Juel, like the members of the Class, were victims of the challenged practices in question, as they were charged more than once by Apple for the same Product, without receiving reimbursement of such excess charges plus interest thereon.

52.    Plaintiffs and the Class have similarly had their legal rights infringed upon, sustained injuries, losses, and damages as described herein and/or are facing irreparable harm arising out of Apple's common course of conduct.  The right of Plaintiffs and each member of the Class to payment of any actual, incidental, consequential, exemplary, and/or statutory damages or equitable monetary relief resulting therefrom equally arise from and are attributable

1  to Apple's challenged conduct in violation of the laws alleged herein, as these claims arise from

2  the same core set of facts.

3  ## ADEQUATE REPRESENTATION

4      53.    Representative Plaintiffs Herskowitz and Juel will fairly and adequately protect

5  the interests of the members of the Class, and the respective subclasses, because: (1) they have

6  no irreconcilable conflicts with or interests materially antagonistic to those of the other Class

7  members; (2) Plaintiffs' interests are aligned with the interests of the Class, and the respective

8  subclasses; and (3) Plaintiffs understand the nature of these allegation and their responsibilities

9  as class representatives to represent the interests of those persons who have been charged more

10  than once by Apple for the same Products.

11      54.    Plaintiffs have retained attorneys who are experienced in the prosecution of

12  class actions, including consumer class actions, who have done significant work investigating

13  or identifying potential claims in this litigation, who have extensive knowledge of the

14  applicable law, and who have committed and will continue to commit substantial resources to

15  representing the Class.

16  ## SUPERIORITY AND MANAGEABILITY OF CLASS LITIGATION

17      55.    A class action is superior to other available methods for the fair and efficient

18  adjudication of this controversy and possesses substantial benefits because there is no other

19  available method that has greater practical advantages for handling this litigation on a group-

20  wide basis on behalf of all affected persons.

21      56.    Individual joinder of all Class members is impracticable as Class members are

22  dispersed throughout the country, and no other method of adjudication of all claims asserted

23  herein is more efficient and manageable while at the same time providing all the remedies

24  available to ensure that the full purpose of the relevant laws is effectuated.

25      57.    Because the damages suffered by each individual member of the Class are

26  relatively insubstantial, the liability issues detailed herein predominate, and the relief sought is

27  discrete, the expense and burden of individual litigation in order to obtain such relief would

28  make it difficult or impossible for individual members of the Class to redress the wrongs done

1  to them on an individual case-by-case basis, and the cost to the court system of adjudicating

2  such litigation on an individual basis would be substantial.  Individualized litigation would also

3  present the potential of varying, inconsistent, or contradictory judgments and would magnify

4  the delay and expense to all parties and to the court system resulting from multiple trials of the

5  same factual issues.

6         58.    Upon information and belief, the names and addresses of some, if not all, Class

7  members appear in a computer database under Apple's control, so notice of the pendency and

8  any resolution of this action can be provided in a cost-effective manner to the Class members

9  through publication and/or individual mailed or electronic notice.

### COUNT ONE
### BREACH OF CONTRACT
**(BY MEMBERS OF SUBCLASS A AGAINST DEFENDANT APPLE)**

13        59.    Plaintiff Herskowitz repeats and realleges each and every allegation contained

14  above as if set forth fully herein.

15        60.    Apple's customers cannot make any purchases through the Apple Stores without

16  agreeing to accept and be bound by the Agreement.  Accordingly, every customer, including

17  Plaintiff Herskowitz, entered into the Agreement with Apple prior to using the Apple Stores to

18  purchase Products.

19        61.    Plaintiff Herskowitz has performed all, or substantially all conditions,

20  covenants, and promises required on his part to be performed in accordance with the terms and

21  conditions of the Agreement, or they have been waived by Apple.

22        62.    After purchasing and paying for a Product from Apple, on or about December 2,

23  2010 Plaintiff Herskowitz requested that Apple refund the amount of $1.29 that Apple had

24  double-billed him in connection with his purchase of that Product, a song on iTunes.

25        63.    On or about December 3, 2010, Apple breached the Agreement by refusing to

26  refund Plaintiff Herskowitz the $1.29 that it had double-billed him.  Apple also similarly

27  double-billed the members of Subclass A for their purchases under the Agreement, and to date

28  Apple has not refunded those overcharges.

64.    As a result of Apple's breach of the Agreement, Plaintiff Herskowitz and the members of Subclass A members have been damaged in an amount to be determined at trial.

**COUNT TWO**
**BREACH OF CONTRACT**
**(BY MEMBERS OF SUBCLASS B AGAINST DEFENDANT APPLE)**

65.    Plaintiff Juel repeats and realleges each and every allegation contained above as if set forth fully herein.

66.    Apple's customers cannot make any purchases through the Apple Stores without agreeing to accept and be bound by the Agreement.  Accordingly, every customer, including Plaintiff Juel, entered into the Agreement with Apple prior to using the Apple Stores to purchase Products.

67.    Plaintiff Juel has performed all, or substantially all conditions, covenants, and promises required on her part to be performed in accordance with the terms and conditions of the Agreement, or they have been waived by Apple.

68.    On December 31, 2010, Plaintiff Juel purchased a song from Apple on iTunes.

69.    Plaintiff Juel paid Apple for the purchase of the song.

70.    Plaintiff Juel later tried to access the song but could not.  When Plaintiff Juel downloaded it again, even though Apple's records showed she had already purchased the song and had not exceeded her devices limit, Apple charged her a second time for the same Product.

71.    Apple breached the Agreement it had with Plaintiff Juel by not allowing her to access the same Product without being charged a second time.

72.    Apple has acted similarly to the members of Subclass B, denying them reasonable access to purchased Product without charging them for the same Product a second time.

73.    As a result of Apple's breach of the Agreement, Plaintiff Juel and the members of Subclass B have been damaged in an amount to be determined at trial.

**COUNT THREE**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(BY MEMBERS OF SUBCLASS A AGAINST DEFENDANT APPLE)**

74.    Plaintiff Herskowitz repeats and realleges each and every allegation contained above as if set forth fully herein.

75.    Apple entered into the Agreement with Plaintiff Herskowitz and the members of Subclass A.   There exists under California law an implied promise of good faith and fair dealing in conduct relating to and arising from the Agreement.

76.    Plaintiff Herskowitz has performed all, or substantially all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the Agreement, or they were waived by Apple.

77.    Apple unfairly interfered with the rights of Plaintiff Herskowitz to receive the benefits of the Agreement by double-billing him for Products purchased under the Agreement. Accordingly, Apple breached the implied covenant of good faith and fair dealing.

78.    As a direct and proximate result of the aforesaid violations, Plaintiff Herskowitz and the members of Subclass A have suffered economic damages in an amount to be determined at trial.

**COUNT FOUR**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(BY MEMBERS OF SUBCLASS B AGAINST DEFENDANT APPLE)**

79.    Plaintiff Juel repeats and realleges each and every allegation contained above as if set forth fully herein.

80.    Apple entered into the Agreement with Plaintiff Juel and the members of Subclass B.   There exists under California law an implied promise of good faith and fair dealing in conduct relating to and arising from the Agreement.

81.    Plaintiff Juel and the members of Subclass B have performed all, or substantially all conditions, covenants, and promises required on her part to be performed in accordance with the terms and conditions of the Agreement, or they were waived by Apple.

82.     Apple unfairly interfered with the rights of Plaintiff Juel to receive the benefits of the Agreement by not allowing her to access the same Product she had purchased without being charged a second time, and this breached the implied covenant of good faith and fair dealing.

83.     As a direct and proximate result of the aforesaid violations, Plaintiff and the members of Subclass B have suffered economic damages in an amount to be determined at trial.

**COUNT FIVE**
**VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ.***
**(BY MEMBERS OF SUBCLASS A AGAINST DEFENDANT APPLE)**

84.     Plaintiff Herskowitz repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85.     Plaintiff Herskowitz brings this count on behalf of himself, on behalf of the Subclass A, and in his capacity as private attorney general against Apple for its unlawful and/or unfair business acts and practices under California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibiting unlawful and/or unfair business acts and practices.

86.     These provisions of California law apply to protect Herskowitz and all Class members because, among other reasons, the Agreement includes a choice-of-law provision stating that "All transactions . . . are governed by California law, without giving effect to its conflict of law provisions."

87.     Apple has double-billed customers, including Plaintiff Herskowitz, who have purchased Products from the Apple Stores.

88.     Apple has failed to refund overcharges and Apple has refused to accede to Plaintiff Herskowitz's request for a refund.  Upon information and belief, Apple likewise has failed and refused, and in the future will fail and refuse, to accede to other requests for refunds by Plaintiff Herskowitz and the members of Subclass A.  Upon information and belief, Apple will continue to commit those acts, unless the Court orders Apple to cease and desist.

89.   Apple's acts hereinabove alleged are immoral, unethical, oppressive, and/or unscrupulous and caused and will cause injuries to consumers and, therefore, constitute unfair competition within the meaning of the UCL.

90.   Apple's purported "no-refund policy" under the Agreement precluding refunds to customers who have been double-billed is unconscionable within the meaning of Cal. Civ. Code § 1670.5.  Accordingly, Apple's policy and/or practice under the Agreement of refusing to award refunds to customers who have been double-billed constitutes an unlawful business act or practice within the meaning of the UCL.

91.   As a direct and proximate result of the aforesaid violations, Plaintiff Herskowitz and Subclass A have suffered substantial economic harm in an amount to be determined at trial. Because the injuries alleged herein occurred without the knowledge or permission of Plaintiff Herskowitz and/or Subclass A, they could not have avoided such injuries.

92.   As a direct and proximate result of Apple's violation of the UCL, Apple has been unjustly enriched and should be required to make restitution to Plaintiff Herskowitz and Subclass A or disgorge its ill-gotten gains under Cal. Bus. & Prof. Code § 17203.

93.   Plaintiff Herskowitz, on behalf of himself and Subclass A, demands judgment against Apple for injunctive relief in the form of restitution, an injunction enjoining Apple from implementing its "no refund" policy concerning double billing, and/or disgorgement of funds paid to Apple as alleged herein.

**COUNT SIX**
**VIOLATIONS OF CLRA**
**(BY MEMBERS OF SUBCLASS A AGAINST DEFENDANT APPLE)**

94.   Plaintiff Herskowitz repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95.   Plaintiff Herskowitz and Subclass A are consumers within the meaning of Cal. Civ. Code § 1761(d), entitled the CLRA.

96.   Apple violated the CLRA's proscriptions against inserting an unconscionable provision in a contract by implementing an unlawful policy and/or practice of refusing to

refund Apple's customers who have been double-billed for purchases of Product and services through the Apple Stores.  *See* Cal. Civ. Code § 1770(a)(19).

97.    Apple has double-billed customers, including Plaintiff Herskowitz, who purchased Products from the Apple Stores.  Apple has failed to refund overcharges and refused to accede to the Plaintiff Herskowitz's request for a refund.   Upon information and belief, Apple likewise has failed and refused, and in the future will fail and refuse, to accede to other requests for refunds by Plaintiff Herskowitz and the members of Subclass A.   Upon information and belief, Apple will continue to commit those acts, unless the Court orders Apple to cease and desist.

98.    For the foregoing reasons, Plaintiff Herskowitz, on behalf of himself and all those similarly situated, demands judgment against Apple for injunctive relief in the form of restitution and disgorgement of funds paid to Apple and an injunction enjoining Apple from implementing its "no refund" policy concerning double billing.

99.    In accordance with Cal. Civ. Code § 1782(a), on May 8, 2012, Plaintiff Herskowitz's counsel served Apple, by certified mail, with notice of Apple's alleged violations of the CLRA (the "CLRA Demand Letter").

100.    Apple has not met the demand set forth in the CLRA Demand Letter, and therefore, Plaintiff Herskowitz seeks the following relief under Cal. Civ. Code § 1780 for Apple's violations of CLRA § 1770(a)(19):

  a.  actual damages under Cal. Civ. Code § 1780(a)(1);

  b.  an injunction enjoining Apple from implementing its "no refund" policy concerning double-billing under Cal. Civ. Code § 1780(a)(2);

  c.  restitution of all double-billings under Cal. Civ. Code § 1780(a)(3);

  d.  punitive damages under Cal. Civ. Code § 1780(a)(4);

  e.  attorneys' fees and costs under Cal. Civ. Code § 1780(e); and

  f.  any other relief the Court deems proper under Cal. Civ. Code § 1780(a)(5).

**COUNT SEVEN**
**U̲N̲J̲U̲S̲T̲ ̲E̲N̲R̲I̲C̲H̲M̲E̲N̲T̲**
**(BY MEMBERS OF SUBCLASS A AGAINST DEFENDANT APPLE)**

101.    Plaintiff Herskowitz repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102.    Apple double-billed Plaintiff Herskowitz for purchases of Products from the Apple Stores.  Apple has not refunded the overcharges, and refused his demand for a refund.

103.    As a result of Apple's conduct, Plaintiff Herskowitz overpaid for Products purchased from the Apple Stores.  Accordingly, Apple has been unjustly enriched to Plaintiff Herskowitz's direct detriment.

104.    It is against equity and good conscience to permit Apple to benefit from double-billing Plaintiff Herskowitz.

**COUNT EIGHT**
**U̲N̲J̲U̲S̲T̲ ̲E̲N̲R̲I̲C̲H̲M̲E̲N̲T̲**
**(BY MEMBERS OF SUBCLASS B AGAINST DEFENDANT APPLE)**

105.    Plaintiff Juel repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.    Plaintiff Juel purchased a song from Apple through iTunes on December 31, 2010.

107.    Apple knew or had reason to know that its iTunes programs would prevent Plaintiff Juel from reasonably accessing, storing and/or transferring some purchased items, causing customers to download the same Product again.

108.    Despite this knowledge, Apple refused to allow customers to again download an already purchased Product, without charging for it a second time.

109.    Apple did this to Juel and to members of Subclass B.

110.    The retention of money from Plaintiff Juel and the class is unjust, where the customer has paid for the Product and Apple is denying the customer the ability of reasonably accessing, storing and/or transferring the purchased Product.  Apple has been unjustly enriched to the detriment of Plaintiff Juel and the members of Subclass B.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT NINE**
**FRAUD**
**(BY MEMBERS OF SUBCLASS B AGAINST DEFENDANT APPLE)**

111.    Plaintiff Juel repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112.    Apple materially represented widely to the public seeking Products for personal and non-commercial use, that by buying from Apple, the customer would be entitled to access, transfer, store and utilize Products purchased from the Apple Stores for as long as they wish.

113.    Apple further and materially represented widely to the public that purchasers would have "portability" of their Products bought from Apple, and represented that its customers would be "authorized to use Product on five Apple-authorized devices at any time,"[21] and "store Product from up to five different Accounts at a time on compatible devices."[22]

114.    Apple made these representations widely to the public through print, broadcast, Internet, and other media, with the intent and expectation that all persons considering a purchase of an Apple Product would understand those features to be applicable.   Apple specifically intended that those representations would cause persons to choose to buy Apple Product over competitor's products for those reasons.

115.    Plaintiff Juel and the members of Subclass B did reasonably rely on those representations in purchasing Apple Products.

116.    The representations about possession and ability to reasonably access, transfer store and utilize purchased digital content are material to transactions with Apple Stores.

117.    Apple, however, did not allow Plaintiff Juel to reasonably access or play the song that she purchased from iTunes.

118.    Further, Apple intended to mislead Juel and the members of Subclass B when it made those representations, since the representations were false.

---

[21] http://www.apple.com/legal/itunes/us/terms.html (last viewed Nov. 14, 2012).
[22] *Id.*

119.    Contrary to its representations, Apple did not allow Juel or the members of Subclass B to access, transfer, store and/or utilize Products purchased from the Apple Stores.

120.    Just the opposite, Apple billed customers a second time for Products they already purchased, directly contrary to its promises to customers, especially the promises that customers could download the Product for "up to 5 approved devices."

121.    At the time it made the foregoing representations, and at the time it entered the Agreement with each customer, Apple did not intend to honor those promises and intended to charge customers multiple times for downloading already purchased Products.

122.    Apple knew that Plaintiff Juel had already purchased the song at issue and had not exceeded her devices limit.

123.    Plaintiff Juel was thus harmed by Apple's fraud, in the amount of paying for the same product twice and incurring costs and fees to protect her rights against Apple's fraud.

124.    Apple has acted similarly to the members of Subclass B, and has harmed them in like manner.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action under Fed. R. Civ. P. 23, and certifying the Class and Subclasses as defined herein;

B.    Designating Plaintiffs as Class representatives and their counsel as Class counsel;

C.    Entering judgment in favor of Plaintiffs and the Classes and against Apple;

D.    Requiring Apple to pay damages, plus interest, sustained by Plaintiffs and the Classes by reason of the acts and transactions alleged herein;

E.    Requiring Apple to refund to Class members the amounts of all double-billings;

F.    Requiring Apple to refund to Class members the amounts of all charges imposed on customers for Product that customers purchased from Apple Stores, but were subsequently charged for again;

1    G.    Enjoining Apple from implementing its "no refund" policy concerning double-

2 billing;

3    H.    Enjoining Apple from charging customers for Products purchased from Apple

4 Stores if and when those customers re-download the Product provided they do not exceed their

5 device limit.

6    I.    Imposing punitive damages on Apple by virtue of its willful and intentional

7 misconduct;

8    J.    Awarding Plaintiffs their costs, expenses, disbursements and reasonable

9 attorneys' fees in an amount to be determined at trial; and

10    K.    Awarding Plaintiffs and the Classes such other relief as the Court deems just and

11 proper.

12                          **<u>DEMAND FOR TRIAL BY JURY</u>**

13    Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiffs hereby

14 demand trial by jury of all issues that may be so tried.

15 DATED: November 21, 2012                   Respectfully submitted,

16 **BERMAN DEVALERIO**                       **DWORKEN & BERNSTEIN CO., L.P.A.**

17

18 By: */s/ Joseph J. Tobacco*                By: */s/ Patrick J. Perotti*
   Joseph J. Tabacco, Jr., Esq.              Patrick J. Perotti (*pro hac vice*)
19 jtabacco@bermandevalerio.com               pperotti@dworkenlaw.com
   Christopher T. Heffelfinger, Esq.          Michael R. Rudick (*pro hac vice*)
20 cheffelfinger@bermandevalerio.com          mrudick@dworkenlaw.com
   Anthony D. Phillips                        60 South Park Place
21 aphillips@bermandevalerio.com              Painesville, Ohio 44077
   One California St., Suite 900              Telephone: 440.352.3391
22 San Francisco, California 94111            Facsimile: 440.352.3469
   Telephone: 415.433.3200
23 Facsimile: 415.433.6382                    John A. Kithas (SBN 64284)
                                              Chris D. Land (SBN 238261)
24 Robert J. Axelrod, Esq. (*pro hac vice*)   LAW OFFICES OF JOHN A. KITHAS
   rjaxelrod@pomlaw.com                       One Embarcadero Center, Suite 1020
25 POMERANTZ GROSSMAN HUFFORD                 San Francisco, California 94111
   DAHLSTROM & GROSS LLP                      Telephone: 415.788.8100
26 600 Third Avenue                           Facsimile: 415.788.8001
   New York, New York 10016
27 Telephone: 212.661.1100                    *Attorneys for Plaintiff*
   Facsimile: 212.661.1373                    PHOEBE JUEL

28

1

Judd B. Grossman, Esq. (*pro hac vice*)
jgrossman@grossmanllp.com

2

GROSSMAN LLP
590 Madison Avenue, Suite 1800

3

New York, New York  10022
Telephone:  646.770.7445
Facsimile:  212.521.4044

4

*Attorneys for Plaintiff*

5

ROBERT HERSKOWITZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## E-FILING ATTESTATION

I, Joseph J. Tabacco, Jr., am the ECF User whose ID and password are being used to file this Plaintiffs' First Amended Consolidated Class Action Complaint.  In compliance with General Order 45, X.B., I hereby attest that Patrick J. Perotti, of Dworken & Bernstein Co., L.P.A., has concurred in this filing.

DATED:   November 21, 2012                    By:   */s/ Joseph J. Tobacco*
                                                          Joseph J. Tabacco, Jr., Esq.

**CERTIFICATE OF SERVICE**

I, Leslie R. Cuesta, hereby declare as follows:

I am employed by Berman DeValerio, One California Street, Suite 900, San Francisco, California, 94111. I am over the age of 18 years and am not a party to this action. On November 21, 2012, using the Northern District of California's Electronic Case Filing System ("ECF"), with the ECF ID registered to Christopher T. Heffelfinger, and at his direction, I filed and served true and correct copies of the document(s) described as follows:

**PLAINTIFFS' FIRST AMENDED
CONSOLIDATED CLASS ACTION COMPLAINT**

The ECF System is designed to automatically generate an e-mail message to all parties in the case, which constitutes service.

I further declare that on November 21, 2012, I served true and correct copies of the document(s) listed above on the following attorneys and/or parties, who are not on the list to receive e-mail notices for this case, by placing true copies thereof, enclosed in a sealed envelope, addressed as shown below, affixing proper first class postage, and depositing the envelope in the United States Mail at San Francisco, California, in accordance with Berman DeValerio's ordinary business practices:

Nicole T. Fiorelli
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, OH 44077

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed at San Francisco, California, on November 21, 2012.

Leslie R. Cuesta