1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT HERSKOWITZ, individually and on behalf of all others similarly situated, <br><br>                  Plaintiff, <br>     v. <br> APPLE INC., <br><br>                  Defendant. | Consolidated Case Nos.: <br>    12-CV-02131-LHK <br>    12-CV-03124-LHK <br><br> ORDER GRANTING MOTION TO DISMISS |
| PHOEBE JUEL, individually and on behalf of all others similarly situated, <br><br>                  Plaintiff, <br>     v. <br> APPLE INC., <br><br>                  Defendant. | |

Plaintiffs Robert Herskowitz ("Herskowitz") and Phoebe Juel ("Juel") (collectively, "Plaintiffs") bring this putative class action lawsuit against Apple Inc. ("Apple"), alleging that Apple routinely and unlawfully charges its "e-Store" customers more than once for the same products and services in violation of the consumer agreements governing those transactions, California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*,

1

California's Consumer Legal Remedies Act, California Business and Professions Code § 17500 *et seq.*, and California common law.

Apple moves to dismiss Plaintiffs' First Amended Consolidated Complaint ("FAC"). The Court held a hearing on this motion on April 11, 2013. Having considered the submissions of the parties, the parties' oral arguments, and the relevant law, the Court hereby GRANTS Apple's Motion to Dismiss Plaintiffs' First Amended Consolidated Complaint.

## I. BACKGROUND

### A. Factual Allegations

Apple's "iTunes Store" is a software-based online digital-media store from which customers can purchase music and videos, among other things. FAC ¶ 20, ECF No. 46. Apple also operates an "App Store," a digital-application distribution platform that allows users to browse and purchase applications ("apps") for iPhones, iPads, and iPod Touch devices, FAC ¶ 21, as well as a "Mac App Store," which allows users to purchase and download applications for personal Mac computers, FAC ¶ 22. In addition, Apple operates an "iBookstore," which is part of "iBooks," Apple's e-book application which allows customers to download and read books on the iPhone, the iPad, and the iPod Touch. FAC ¶ 23.

Herskowitz and Juel, on behalf of themselves and others who are similarly situated, allege that Apple bills its "e-Store" customers more than once for the apps, songs, videos, games, and books ("Products") that they purchase for use on their iPhones, iPads, iPod Touches, and/or Mac personal computers. *See* FAC ¶2. Specifically, Plaintiffs allege that Apple: (1) double bills its customers for a single product at the time of purchase; (2) refuses to allow customers to download for free already purchased products despite the fact that the customers have not downloaded the product more times than the contractually specified limit; and (3) prevents customers from accessing, storing, transferring, or managing already purchased products, causing customers to lose purchased products and requiring customers to re-purchase the products at an additional charge. *Id*.

#### 1. Double Billing for a Single Product

2

On or about December 2, 2010, Herskowitz purchased twenty-two songs from the iTunes Store. FAC ¶ 32. However, Apple charged Herskowitz twice for one of his selections, a "pop" song entitled, "Whataya Want from Me." *Id.* As a result, Apple billed Herskowitz a total of $2.58 for a song that cost $1.29 to download. *Id.* Herskowitz reported the double-billing to Apple. FAC ¶ 33. In response, Apple told Herskowitz that it would not refund the overcharge based on its purported no-refund policy:

> Your request for a refund for "Whataya Want from Me" was carefully considered; however, according to the iTunes Store Terms of Sale, all purchases made on the iTunes Store are ineligible for refund. This policy matches Apple's refund policies and provides protection for copyrighted material.

FAC ¶ 7. Herskowitz alleges that Apple has sent identical responses to "countless other customers" who have raised similar complaints, despite the fact that Apple's standard "Terms and Conditions," which "govern[] the 'use of' the Apple Stores," do not explicitly state such a policy. FAC ¶ 7.

### 2. Charging Customers Twice for Re-downloading Products That They Cannot Access

On or about December 31, 2010, Juel purchased and downloaded a song from iTunes. FAC ¶ 10. Although Juel attempted to access the song later, she could not do so. *Id.* Consequently, Juel downloaded the same song again. *Id.* When she did, Apple charged her a second time for purchasing the song, despite the fact that Apple's records showed that she purchased the song previously. *Id.*

Juel alleges that Apple has "adopted a policy and practice of refusing to allow customers to access Products that they previously purchased from the Apple Stores and then charging those customers a second time after the original download for re-downloading the same Product." FAC ¶ 9. Juel contends that this policy is contrary to Apple's "Terms and Conditions" (the "Agreement"), which: (1) provides that personal and noncommercial customers are entitled to keep and utilize the products they purchase from the Apple stores for as long as they wish; (2) allows customers to use their products on five Apple-authorized devices at any time; and (3) permits customers to store products from up to five different Accounts at a time on their compatible devices. *Id.*

3

Plaintiffs seek to bring this putative class action on behalf of a nationwide class consisting of "all individuals or entities who purchased Products from the App Store, the iTunes Store, the iBookstore, and/or the Mac App Store and who were charged more than once and paid Defendant more than once for the same product." FAC ¶ 44. This class also includes two proposed sub-classes. Herskowitz seeks to represent Subclass A, which includes: "[a]ll individuals or entities who were charged at the time of purchase and paid Apple more than once for the same Product . . . ." *Id.* ("Subclass A"). Juel seeks to represent Subclass B, which includes: "[a]ll individuals or entities who purchased any Product . . . and were billed again for subsequently downloading the same Product." *Id.* ("Subclass B"). Plaintiffs seek damages and injunctive relief.

### B.    Procedural History

Herskowitz filed his initial complaint in federal court on April 27, 2012, ECF No. 1, which he then amended on June 15, 2012, ECF No. 12. Juel filed her initial complaint in the Santa Clara Superior Court, which Apple then removed to this Court on June 15, 2012. *See* ECF No. 1, Ex. B, Case No. 12-CV-03124. On July 10, 2012, the Court related the *Herskowitz* and *Juel* cases. ECF No. 15. Apple then filed a Motion to Consolidate the Related Actions, which the Court granted on November 2, 2012. ECF No. 42.

Plaintiffs filed a First Amended Consolidated Class Action Complaint on November 21, 2012. ECF No. 46. On December 11, 2012, Apple filed a Motion to Dismiss the First Amended Complaint for: (1) failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) failure to plead claims grounded in fraud with sufficient particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure; and (3) lack of subject matter jurisdiction as required by Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Def.'s Mot. to Dismiss ("Mot."), ECF No. 47. Apple also filed a Request for Judicial Notice. ECF No. 48. Plaintiffs filed an opposition to the Motion to Dismiss, *see* Pls.' Opp. to Def.'s Mot. to Dismiss ("Opp'n"), ECF No. 52, to which Defendants filed a reply, *see* Def.'s Reply Supp. Mot. to Dismiss ("Reply"), ECF No. 53.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is a court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

## B. Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which

is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

### C.      Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### D.      Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

6

15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

## III.    DISCUSSION

Plaintiffs collectively bring claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) unjust enrichment.  Herskowitz further asserts claims for violation of California's Consumer Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL").  Juel alone asserts a claim for fraud.  Apple seeks to dismiss all of these claims.  For the reasons stated herein, the Court GRANTS Apple's Motion to Dismiss without prejudice.

### A.    Breach of Contract

"In order to state a claim for breach of contract, a plaintiff must plead the existence of a contract, his performance of the contract or excuse for nonperformance, the defendant's breach and resulting damages." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 916, 930 (N.D. Cal. 2012) (citing *Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458 (1985)).  In addition, "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant." *Id.* (citing *Progressive West Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 281 (2005)).

Here, Plaintiffs allege that the use of Apple's "e-Stores" is governed by Apple's standard "Terms and Conditions," to which Plaintiffs refer as the "Agreement."  FAC ¶ 5.  Customers cannot purchase products through the Apple Stores without agreeing to these Terms and Conditions.  *See* FAC ¶ 25.  Accordingly, every customer, including Plaintiffs Herskowitz and Juel, entered into the Agreement with Apple prior to using the Apple Stores to purchase products. *Id.*

7

Under the Agreement, Apple may charge customers only once "for any products purchased and for any additional amounts (including any taxes and late fees, as applicable) that may be accrued by or in connection with your Account." FAC ¶ 26. Nevertheless, on behalf of Subclass A, Herskowitz alleges that Apple billed him twice "in connection with his purchase" of a song on iTunes. FAC ¶ 62. On behalf of Subclass B, Juel alleges that Apple billed her twice after downloading a song and then downloading it again. FAC ¶¶ 71-72.

Apple claims that, although each Plaintiff sets forth a separate breach of contract claim on behalf of the two proposed subclasses, "both fail for the same reason: neither [P]laintiff can point to any term of the Agreement that was actually breached." Mot. at 7. In addition, Apple asserts that Plaintiffs' claims are contrary to an express provision of the contract. Mot. at 8. Accordingly, Apple argues that Plaintiffs' Breach of Contract claims fail as a matter of law.

### 1. Plaintiff Juel: Breach of Contract for Charging Customers Twice for Re-downloading Products They Cannot Access

Juel alleges that Apple "breached the Agreement it had with Plaintiff Juel by not allowing her to access the same Product without being charged a second time." FAC ¶71. Juel contends that this amounts to a breach of contract because: (1) Juel "performed her obligations under Apple's adhesion contract—to pay for her purchase;" (2) "the meaning of the term 'download' is undefined in the Agreement, and Apple's proposed construction conflicts with ordinary usage;" (3) "the contract does not state that a customer will be billed a second time if she downloads the same song more than once;" (4) "the Agreement expressly permits Juel to download a song to as many as five devices, yet Apple charged her twice for downloading the same song less than five times;" and (5) "the ambiguities in the adhesion contract drafted by Apple should be interpreted against it." Opp'n at 8-9. Despite Juel's arguments, the Court does not find that the factual allegations contained in the FAC support a reasonable inference that Apple has committed a breach of contract.

First, the Agreement in effect at the time of Juel's purchase contained an express provision that purchasers were not entitled to re-download a song free of charge. Specifically, the Agreement provided that:

Case Nos.: 12-CV-02131-LHK; 12-CV-03124-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

Products may be *downloaded only once* and cannot be replaced if lost for any reason. Once a Product is downloaded, it is your responsibility not to lose, destroy or damage it, and Apple shall not be liable to you if you do so.

*See* Def.'s Request for Judicial Notice, ECF No. 48, Ex. A (Decl. Penelope Preovolos ("Preovolos Decl.")), at AGMT00006 (emphasis added).[1] Here, Juel alleges that she "purchased and downloaded a song from the Apple Stores pursuant to the Agreement," and then "downloaded it again," after trying to access the song, but being unable to do so. FAC ¶ 10. By virtue of the express language of the Agreement, Juel was only entitled to download the song once. Therefore, the fact that she was charged twice for downloading a song twice does not amount to a breach of contract.

In addition, the Agreement contained an express and exclusive remedy to contact Apple for replacement or refund of the price paid for a song if "technical problems prevent or unreasonably delay delivery" of a song. Mot. at 9 (citing Preovolos Decl. at AGMT00002). In this case, Juel does not allege that she contacted Apple or in any way sought to take advantage of this contractual right.

Moreover, contrary to Juel's assertion, the Agreement in effect at the time of Juel's purchase did not "expressly permit[] Juel to download a song to as many as five devices." Opp'n at 8-9. Rather, the Agreement "authorize[d] [customers] to *use* Products on five Apple-authorized

---

[1] In support of Apple's Motion to Dismiss, Apple requests that the Court take judicial notice of Apple's iTunes Store, App Store, and iBookstore Terms of Sale and iTunes Store Terms and Conditions, as well as the App Store and iBookstore Terms and Conditions, which were operative when Plaintiffs Herskowitz and Juel allegedly purchased the iTunes songs at issue in this action. *See* Def.'s Request for Judicial Notice, ECF No. 48. Pursuant to Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of adjudicative facts "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The materials attached as Exhibit A in support of the Request for Judicial Notice are cited, quoted, and/or referenced in Plaintiffs' FAC. *See Brach v. Tunell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (holding that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss"). In addition, Plaintiffs do not oppose this Court's taking judicial notice of these materials and, in fact, refer to these materials in their Opposition. *See* Opp'n at 4 n.3 ("Plaintiffs take no position on Apple's request that the Court take judicial notice" of these materials); *see, e.g.*, Opp'n at 7 & 9 (referring to Exhibit A). Accordingly, the Court GRANTS Apple's Request for Judicial Notice.

9

devices at any time," and to "*store* Products from up to five different Accounts at a time on compatible devices." Preovolos Decl. at AGMT00005-06 (emphasis added). Permitting customers to "use" and "store" products on five devices is different than permitting customers to "download" the same song onto five different devices for the price of one song purchase. *See* Reply at 3 (noting that "Juel's argument confuses the *download* of a song from iTunes with a customer's ability to sync and play a song on multiple devices.").

Despite the plain language of the Agreement, Juel seeks to insert ambiguity into the contract by claiming that Apple's use of the term download constitutes "some specialized meaning known only to Apple," whereas Juel's definition of "download" means "plac[ing] a song on a separate device." Opp'n at 9. In support of her position, Juel cites to *Merriam-Webster's Collegiate Dictionary*, 376 (11th ed. 2006), for the proposition that the ordinary meaning of the term "download" is to "transfer (as data or files) from a usually large computer to the memory of another device (as a smaller computer)." *See* Opp'n at 9. However, as noted by Apple, transferring a song from iTunes (a larger system) to the memory of a personal computer (a smaller device) is perfectly consistent with this definition. *See* Reply at 3 n.2.

"Under California contract law, 'if the language [of a contract] is clear and explicit, and does not involve an absurdity,' the language must govern the contracts interpretation." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012) (citing Cal. Civ. Code § 1638). "However, '[i]f a contract is capable of two different reasonable interpretations, the contract is ambiguous.'" *Id.* (quoting *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441, 1448 (1997)). Moreover, under California contract law, "'if reasonably practicable,' a contract must be interpreted as a whole, 'so as to give effect to every part, . . . each clause helping to interpret the other.'" *Id.* (citing Cal. Civ. Code § 1641). "In cases of uncertainty not removed by . . . [California's interpretation of contracts], the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

The Court has doubts about whether Apple's use of the term "download" is actually contrary to ordinary usage. Nevertheless, any ambiguity regarding the definition of "download" and the "multiple device" provision appears to be eliminated by the provision prohibiting multiple

10

downloads. If Juel's interpretation were adopted, this latter provision—which states that "[p]roducts may be downloaded only once"—would seemingly be rendered meaningless. Therefore, in light of the express provisions within the Agreement, the Court does not find that Juel has pled sufficient facts to support a reasonable inference that Apple is liable for a breach of contract on the basis alleged. *See Iqbal*, 556 U.S. at 678 (holding that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").[2] Accordingly, the Court GRANTS Apple's Motion to Dismiss Juel's breach of contract claim without prejudice.

### 2. Subclass A: Breach of Contract for Double Billing Customers

Herskowitz alleges in the FAC that he was charged twice for purchasing a single song. *See* FAC ¶ 7 ("Plaintiff Herskowitz was charged twice for purchasing a single song."); FAC ¶ 32 ("Apple billed Mr. Herskowitz a total of $2.58 for a song that cost $1.29 to download."). Apple contends that Herskowitz has failed to allege a breach of contract claim because he "unilaterally elected to download the song a second time, only contacting Apple to request a refund after he did so." Mot. at 9. In opposition, Herskowitz disputes that he downloaded a song a second time and, instead, asserts that his actual claim is that "Apple charged him twice for a single download."[3] Opp'n at 8.

For the purpose of this Rule 12(b)(6) motion, both parties rely on assertions and references to evidence contained outside of the FAC. *But see Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."); *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

---

[2] During the hearing on Apple's motion to dismiss, Juel raised other arguments—based on recently produced discovery—regarding why Apple breached its contract by virtue of charging Juel twice after downloading the song twice. Those factual allegations are not contained within the face of the FAC. Accordingly, the Court does not consider these allegations for the purpose of this Motion.

[3] During the hearing on Apple's Motion to Dismiss, the Court sought to clarify the bases of Herskowitz's claims. Herskowitz's counsel's response was evasive.

Case Nos.: 12-CV-02131-LHK; 12-CV-03124-LHK
ORDER GRANTING MOTION TO DISMISS

opposition to a motion to dismiss.") (internal quotation marks and citation omitted). Yet, despite their allegations and arguments relating to facts beyond those contained in the FAC, neither side appears to be requesting that this Rule 12(b)(6) motion be treated as a motion for summary judgment. *But see Erlich v. Glasner*, 374 F.2d 681, 683 (9th Cir. 1967) (holding that evidence submitted by a moving party beyond the pleadings, which is not excluded by a district court, mandates that a Rule 12(b) motion be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure). Therefore, the Court declines to consider Plaintiffs' and Apple's supplementary factual arguments and allegations in ruling on this motion.

Nevertheless, the Court finds Herskowitz's factual allegations regarding the basis for his entitlement to relief to be unclear from the face of the FAC. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Here, it is unclear from the face of the complaint whether Herskowitz is alleging a breach of contract claim based on: (1) the fact that Herskowitz purchased and downloaded one song for which Apple charged him twice, which may constitute a breach of contract claim;[4] or (2) whether Herskowitz intentionally or unintentionally purchased and downloaded a single song twice, and was then charged by Apple twice, which—as discussed in regard to Juel—may not constitute a breach of contract claim. Consequently, the Court does not find that Herskowitz has sufficiently alleged and shown facts that provide the grounds for his entitlement to relief. *But see Twombly*,

---

[4] During the hearing on Apple's Motion to Dismiss, Apple stated that it would not dispute that Herskowitz had sufficiently alleged a claim for a breach of contract and/or a breach of the implied covenant of good faith and fair dealing if, indeed, Herskowitz's claim is that he downloaded one song once, for which he was charged twice.

12

550 U.S. at 555; *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (citing Rule 8(a)(2)). Thus, Herskowitz has failed to provide "more than a sheer possibility that [Apple] has acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, the Court GRANTS Apple's Motion to Dismiss this claim with leave to amend.

### B.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012) (internal quotation marks and citations omitted). "The covenant 'is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995)).

In order to establish a breach of the covenant of good faith and fair dealing, a plaintiff must show: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld*, 732 F. Supp. 2d at 968 (citing Judicial Council of California Civil Jury Instruction 325). Here, neither Plaintiff has sufficiently alleged a claim for the breach of the implied covenant of good faith and fair dealing.

Juel alleges that Apple breached the implied covenant of good faith and fair dealing by "not allowing her to access the same Product she had purchased without being charged a second time." FAC ¶ 82. However, "[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089,

13

1093-1094 (2004) (emphasis added); *see also Wolf v. Walt Disney Pictures and Television*, 162

Cal. App. 4th 1107, 1120 (2008) (amended) ("The general rule [regarding the covenant of good

faith] is . . . subject to the exception that the parties may, by express provisions of the contract,

grant the right to engage in the very acts and conduct which would otherwise have been forbidden

by an implied covenant of good faith and fair dealing") (internal quotation marks and citation

omitted). As discussed previously, the express terms of the Agreement state that a song can be

downloaded only once and provide an express and exclusive remedy for any issues with the initial

download. *See* Preovolos Decl. at AGMT00002, AGMT00006. In light of the express language

contained within the Agreement, the Court does not find that Juel has sufficiently stated a plausible

claim for a breach of the implied covenant of good faith and fair dealing.

Herskowitz alleges that Apple breached the implied covenant by "double-billing him for

Products purchased under the agreement." FAC ¶ 77. However, given the indeterminate nature of

Herskowitz's breach of contract claim, the Court does not find that Herskowitz has sufficiently

alleged and shown a plausible claim for the implied covenant of good faith and fair dealing. *See*

*Iqbal*, 556 U.S. at 679.

Thus, the Court GRANTS Apple's Motion to Dismiss without prejudice both of Plaintiffs'

claims for breach of the implied covenant of good faith and fair dealing.

## C. California Legal Remedies Act

Herskowitz, on behalf of the members of Subclass A, alleges that Apple violated the CLRA

by "inserting an unconscionable provision in a contract by implementing an unlawful policy and/or

practice of refusing to refund Apple's customers who have been double-billed for purchases of

Product and services through the Apple Stores." FAC ¶ 96 (citing Cal. Civ. Code §1770(a)(19)).

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or

practices undertaken by any person in a transaction intended to result or which results in the sale or

lease of goods or services to any consumer." Cal. Civ.Code § 1770(a).

Apple contends that Herskowtiz's claim fails because he cannot allege facts establishing

either "procedural" or "substantive" unconscionability. Mot. at 12. In California,

"unconscionability has both a 'procedural' and a 'substantive' element, the former focusing on

14

'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000), *abrogated in part on other grounds in AT&T Mobility LLC v. Concepcion*, 563 U.S. ---, 131 S. Ct. 1740, 1746 (2011) (internal quotation marks and citations omitted). "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (citing *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (1997)). "But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Id.* (internal quotation marks and citation omitted).

Herskowitz contends that he has pleaded oppression and surprise based on Apple's "unconscionable decision not to provide a refund after double-billing him for purchasing a single download." Opp'n at 16. According to Herskowitz, Apple billed his "credit card twice *before* sending him a receipt alerting him that he had been double-billed for a product that Mr. Herskowitz did not—and did not want to—purchase." *Id.* In addition, Herskowitz alleges that he has satisfied the substantive unconscionability prong because Apple's refusal to refund Herskowitz after charging him double the advertised price is so overly harsh and one-sided as to be considered unconscionable under the CLRA. Opp'n at 17. Herskowitz notes that "Courts have found unconscionabiltiy in situations where a seller charged a price for commodities several times greater than their actual value." *Id.* (citing *Carboni v. Arrospide*, 2 Cal. App. 4th 76, 84 (1991) (collecting cases).

If Herskowitz's claim is that he purchased and twice downloaded a single song, for which he was then charged twice, the Court does not find that Herskowitz has satisfied the "surprise" or "oppression" elements of the procedural unconscionability prong. After all, a clear contractual provision alerting customers that they may not download a song twice would appear to eliminate any element of surprise or oppression. *See* Preovolos Decl. at AGMT00006. Even if Herskowitz's claim is that he was charged twice after purchasing and downloading a song only once, the Court

15

1    has concerns about whether Apple's Agreement is so "overly harsh" or "one-sided" as to create

2    results that "shock the conscience." *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th

3    1224, 1245 (2007) ("The substantive element of unconscionability focuses on the actual terms of

4    the agreement and evaluates whether they create overly harsh or one-sided results as to shock the

5    conscience.") (internal quotation marks and citation omitted). Ultimately, due to limited

6    allegations contained in the FAC, the Court does not find that Herskowitz has sufficiently alleged

7    facts that provide "more than a sheer possibility that [Apple] has acted unlawfully" for the reasons

8    alleged. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The Court thus GRANTS Apple's

9    Motion to Dismiss this claim without prejudice.[5]

10          **D.**      **Unfair Competition Law**

11         Plaintiff Herskowitz, on behalf of himself and Subclass A, also brings a claim for unlawful

12    and/or unfair business acts and practices under California's UCL. FAC ¶ 85. The UCL creates a

13    cause of action for business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus.

14    & Profs. Code § 17200. Its coverage has been described as "sweeping," and its standard for

15    wrongful business conduct is "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977,

16    995 (9th Cir. 2006). Each "prong" of the UCL provides a separate and distinct theory of liability,

17    *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Here, Herskowitz

18    asserts claims under the "unlawful" and "unfair" prongs.

19         The unlawful prong of the UCL prohibits "anything that can properly be called a business

20    practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular*

21    *Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks and citations omitted). By

22    proscribing "any unlawful" business practice, the UCL permits injured consumers to "borrow"

23    violations of other laws and treat them as unfair competition that is independently actionable. *Id*.

24    Herskowitz seeks to bring a claim under the unlawful prong of the UCL by alleging that "Apple's

25    purported 'no-refund policy' under the Agreement precluding refunds to customers who have been

26

27    ───────────────

     [5] Given the deficiencies in the FAC, the Court declines to reach the question of whether iTunes

28    songs constitute "goods" or 'services' for the purpose of the CLRA. *See* Cal. Civ. Code § 1761
     (defining "goods" and "services").

Case Nos.: 12-CV-02131-LHK; 12-CV-03124-LHK
ORDER GRANTING MOTION TO DISMISS

1    double-billed is unconscionable within the meaning of the UCL." FAC ¶ 90. For the reasons

2    already discussed in regard to Herskowitz's CLRA claim based on unsconscionability—as well as

3    his breach of contract and breach of implied covenant claims—the Court finds that Herskowitz has

4    not plausibly alleged facts sufficient to provide a reasonable basis for inferring that Apple's

5    agreement and enforcement thereof is unconscionable. *See Iqbal*, 556 U.S. at 679. Thus, no

6    violation of law serves as the basis for the unlawful prong of Herskowitz's UCL claim.

7          The UCL also creates a cause of action for a business practice that is "unfair" even if not

8    specifically proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

9    4th 1134, 1143 (2003). "The UCL does not define the term 'unfair' . . . [and] the proper definition

10    of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Davis v.*

11    *HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012) (citing *Lozano*, 504 F.3d at 735).

12    Nevertheless, there are at least two possible tests: (1) the "tethering test," which requires "that the

13    public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong

14    of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions," *Drum v.*

15    *San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010); *Bardin v. Daimlerchrysler*

16    *Corp.*, 136 Cal. App. 4th 1255, 1260-61 (2006); and (2) the "balancing test," which examines

17    whether the challenged business practice is "immoral, unethical, oppressive, unscrupulous or

18    substantially injurious to consumers and requires the court to weigh the utility of the defendant's

19    conduct against the gravity of the harm to the alleged victim," *Drum* , 182 Cal. App. 4th at 257

20    (citing *Bardin*, 136 Cal. App. 4th at 1260 (2006)); *cf. Williamson v. Reinalt-Thomas Corp.*, No. 11-

21    03548, 2012 WL 1438812,*11 (N.D. Cal. Apr. 25, 2012) (recognizing that the "balancing test" is

22    sometimes construed as two separate tests, as some California appellate courts have applied the

23    balancing test as requiring only that a court "weigh the utility of the defendant's conduct against

24    the gravity of the harm to the alleged victim," *see S. Bay Chevrolet v. Gen. Motors Acceptance*

25    *Corp.*, 72 Cal. App. 4th 861, 886 (1999), whereas other appellate state courts have applied a

26    slightly different test which mandates that plaintiffs show that a practice is "immoral, unethical,

27

28

oppressive, unscrupulous, or substantially injurious to consumers, *see Bardin*, 136 Cal. App. 4th at 1260).[6]

Herskowitz argues that his allegations satisfy the "tethering test" because "Apple has interpreted and applied the Agreement's 'final sale' provision in an unconscionable manner and California law has declared its disapproval of unconscionable contract terms through specific statutory provisions such as California Civil Code Sections 1670.5 and 1770(a)(19)." Opp'n at 19. Because the Court does not find that Herskowitz has sufficiently alleged violations based on unconscionability, the Court similarly finds that Herskowitz has not alleged a violation that is tethered to any statutory provision.

Nevertheless, Herskowitz also contends that his allegations satisfy the "balancing test" because "he claims that he attempted to purchase a single download, yet Apple billed him for two downloads, citing its 'final sale' policy as its sole grounds for refusing to refund him the overcharged amount." Opp'n at 19. According to Herskowitz, "[w]hile Apple may find it expedient—and profitable—to refuse to rectify overcharges, that cannot be a valid 'countervailing benefit' under the UCL." *Id.* "The harm to customers, on the other hand, is considerable because if Apple prevails, e-Stores customers would bear the risk that Apple might unilaterally bill them multiple times when they attempt to purchase a single song." *Id.* Apple argues that "it is difficult to see how [Apple's] conduct negatively impacted' Herskowitz, when the Agreement made it completely clear that Herskowitz could only download a song once, and Herskowitz agreed to that term." Mot. at 16 (citing *Williamson v. Reinalt-Thomas Corp.*, No. 11-03548, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012).

---

[6] As this Court noted in *Williamson*, still other courts "have adopted the three-pronged test contained in the Federal Trade Commission Act, 15 U.S.C. § 45(a), holding that a business practice is unfair under the UCL if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Williamson*, 2012 WL 1438812, *11 (citing *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403-05 (2006)). "However, the Ninth Circuit has rejected this last test as inapplicable to claims of anti-consumer, as opposed to anti-competitive, conduct, and 'decline[s] to apply [it] in the absence of a clear holding from the California Supreme Court.'" *Id.* (citing *Lozano*, 504 F.3d at 736).

Case Nos.: 12-CV-02131-LHK; 12-CV-03124-LHK
ORDER GRANTING MOTION TO DISMISS

1    The Court finds that, if Herskowitz's allegation is that Apple charges individuals twice for a

2    single purchase and single download, his contention may suffice to state a claim for unfairness

3    under the UCL.  However, if Herskowitz's allegation is that Apple is required to issue refunds after

4    customers download the same song multiple times, despite the clear provision warning customers

5    to download a song only once and the provision providing for refunds under limited circumstances,

6    the plausibility of such a claim is much weaker.  Given the ambiguity in Herskowitz's pleadings,

7    the Court GRANTS Apple's Motion to Dismiss this claim, though affords Herskowitz leave to

8    amend.

9        **E.    Fraud**

10       Apple also moves to dismiss the fraud claim, brought only by Juel, for failure to satisfy

11   Rule 9(b)'s heightened pleading requirements.  Mot. at 17.  The elements of a fraud claim are: (1)

12   misrepresentation; (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, *i.e.*, to induce

13   reliance; (4) justifiable reliance; and (5) resulting damage.  *See Lazar v. Superior Court*, 12 Cal.

14   4th 631, 638 (1996).  Apple argues that Juel's fraud claim fails to meet Rule 9(b) because "she

15   alleges no facts that show the 'who, what, when, where, and how' of the alleged fraud, any

16   knowledge of the falsity or intent to defaud [*sic*], or any justifiable reliance."  Mot. at 17.

17       "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of

18   the misconduct charged," *Kearns*, 567 F.3d at 1124, as well as the circumstances indicating

19   fraudulent conduct, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Juel

20   contends that the FAC satisfies this requirement because of the following: (1) the "who" is Juel and

21   Apple; (2) the "what" is "Apple's policy of charging its customers more than once for a single

22   product," *see, e.g.*, FAC ¶ 10 ("even though Apple's records showed that she had already

23   purchased the song, Apple charged her a second time for the same Product"); (3) the "when" is

24   December 31, 2010—the date of Juel's initial transaction—and over a period of years to other

25   customers, *see* FAC ¶¶ 10, 39; (4) the "where" is purchases made online through iTunes, FAC ¶

26   68; and (5) the "how" is Apple's representations "over a period of years that its customers could

27   download its products on multiple devices,"  Opp'n at 22 (citing FAC ¶ 39).  The Court finds that

28   Juel has failed to allege the "what," "when," "where," and "how" elements of a claim for fraud,

19

particularly as they relate to Apple's alleged misrepresentations, scienter, intent to defraud, or Juel's justifiable reliance.

First, despite Juel's references to Apple's "misleading advertising campaign," *see* FAC ¶ 39, Juel does not point to any representation that Apple allowed customers to "redownload" a song if they "could not locate" it for any other reason. In fact, as discussed previously, the Agreement states expressly that iTunes songs "may be downloaded only once and cannot be replaced if lost for any reason." Preovolos Decl. at AGMT00006. Moreover, the fact that Apple permits customers to burn songs onto CDs and play songs on up to five computers does not amount to a misrepresentation about customers being able to *download* a song multiple times on the same computer without being charged for each download. At the very least, to satisfy Rule 9(b)'s heightened pleading requirement, Juel must allege with more particularity why these statements are false. *See In re GlenFed, Inc.*, 42 F.3d at 1548 (9th Cir. 1994). In addition, Juel does not specifically allege "when" and "where" she saw and relied upon the alleged misrepresentations. *See Kearns*, 567 F.3d at 1126 (failing to specify when alleged misrepresentation was made, or when the plaintiffs was exposed to it, did not give the defendant an opportunity to respond to the alleged misconduct).

Second, Juel does not allege any facts supporting a reasonable inference that Apple had knowledge of an alleged misrepresentation or an intent to defraud, as required by Rule 9(b). *See Lazar*, 12 Cal. 4th at 638. Juel alleges that "Apple intended to mislead Juel and the members of Subclass B" when it made representations "about possession and ability to reasonably access, transfer, store and utilize Products purchased from the Apple Stores" because "the representations were false." *See* FAC ¶¶ 112-113, 118, 119. However, Juel's claims constitute little more than "conclusory allegations" and "unwarranted inferences." *Adams*, 355 F.3d at 1183. Without more, there is no basis for inferring that Apple made any false statements knowingly and with the intent to defraud its customers. Similarly, Juel's claim regarding justifiable reliance does not rise above the level of a conclusory allegation. Specifically, Juel alleges that she and members of Subclass B "did reasonably rely on those misrepresentations in purchasing Apple Products." FAC ¶ 115. This

is not sufficient, in and of itself, to satisfy the heightened requirements of Rule 9(b). *See Iqbal*, 556 U.S. at 679.

Accordingly, the Court GRANTS Apple's Motion to Dismiss Juel's fraud claim without prejudice.

### F.     Unjust Enrichment

Both Herskowitz and Juel bring a claim for restitution based on "unjust enrichment." Apple contends that this claim must be dismissed because California does not recognize "unjust enrichment" as a separate cause of action. Mot. at 20. The Court agrees.

Despite some inconsistency in the law, several recent decisions by the California Court of Appeals have held that "[u]njust enrichment is not a cause of action, just a restitution claim." *Hill v. Roll Int'l Corp.,* 195 Cal. App. 4th 1295, 1307 (2011); *accord Levine v. Blue Shield of Cal.,* 189 Cal. App. 4th 1117, 1138 (2010); *Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1370 (2010); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). In light of this recent persuasive authority, this Court has previously determined that there is no cause of action for unjust enrichment under California law. *See, e.g., Low v. LinkedIn Corp.*, --- F. Supp. 2d ---, 2012 WL 2873847, *15 (N.D. Cal. 2012); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814 (N.D. Cal. 2011); *accord Ferrington v. McAfee, Inc.,* No. 10-01455, 2010 WL 3910169, at *17 (N.D. Cal. Oct. 5, 2010) (citing *Durell*, 183 Cal. App. 4th at 1370)). Other federal courts have similarly determined that there is no independent cause of action for unjust enrichment. *See, e.g.*, *Robinson v. HSBC Bank USA,* 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (dismissing with prejudice plaintiffs' unjust enrichment claim brought in connection with claims of misappropriation and violation of the UCL because unjust enrichment does not exist as a stand-alone cause of action); *LaCourt v. Specific Media, Inc.*, No. 10-1256, 2011 WL 1661532, *8 (C.D. Cal. 2011) (dismissing unjust enrichment claim because it "cannot serve as an independent cause of action"); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091-92 (C.D. Cal. 2010) (same).

Accordingly, the Court thus GRANTS Defendants' Motion to Dismiss Apple's claim for Restitution Based on Unjust Enrichment with prejudice.

### G.     Plausibility, Particularity, and Standing

Case Nos.: 12-CV-02131-LHK; 12-CV-03124-LHK
ORDER GRANTING MOTION TO DISMISS

1    Finally, Apple argues that Plaintiffs' individual claims, which are the subject of this Motion

2    to Dismiss, relate solely to iTunes songs; Plaintiffs do not allege that they purchased digital content

3    from any other Apple e-store, much less that they paid more than once for such products.  Mot. at

4    20, 21.  Accordingly, Apple argues that, "Plaintiffs do not allege facts sufficient under either Rule

5    8 or Rule 9(b) to state a claim as to any product other than the songs they purchased through the

6    iTunes Store."  *Id.* at 21.  In addition, Apple contends that Plaintiffs lack standing to assert claims

7    regarding such other products.  *Id.*  Plaintiffs assert that all of Apple's arguments relate to class

8    certification, and are thus premature.  Opp'n at 24.

9    An Article III federal court must ask whether a plaintiff has suffered sufficient injury to

10   satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  *See Clapper v.*

11   *Amnesty Int'l*, --- U.S. ---, 133 S.Ct. 1138, 1146 (2013) ("One element of the case-or-controversy

12   requirement' is that plaintiffs 'must establish that they have standing to sue.'") (quoting *Raines v.*

13   *Byrd*, 521 U.S. 811, 818 (1997)).  To satisfy Article III standing, a plaintiff must allege: (1) injury-

14   in-fact that is concrete and particularized, as well as actual and imminent; (2) wherein injury is

15   fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling.

16   *Monsanto Co. v. Geertson Seed Farms*, --- U.S. ---, 130 S.Ct. 2743, 2752 (2010); *Friends of the*

17   *Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000) (same); *Lujan v.*

18   *Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) (same).  "The party invoking federal

19   jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

20   Courts are split as to whether an actual purchase is required to establish the requisite injury-

21   in-fact for the purpose of Article III standing or whether this is an issue better resolved at the class

22   certification stage.  *Compare Granfield v. NVIDIA Corp.*, No. 11-05403, 2012 WL 2847575, at *6

23   (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she

24   purchased and products that she did not purchase, claims relating to products not purchased must

25   be dismissed for lack of standing"), *with Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-2910,

26   2012 WL 2990766, *11-13 (N.D. Cal. July 20, 2012) (observing that "the critical inquiry seems to

27   be whether there is sufficient similarity between the products purchased and not purchased" and

28   holding that "any concerns . . . about material differences [in ice creams] are better addressed at the

22

1    class certification stage rather than at the 12(b)(6) stage"). Other cases in this district have, instead,

2    focused on Defendants' "uniform exertion of control" such that the harm alleged by named

3    plaintiffs is similar to the harm alleged by the putative class. *See, e.g.*, *Yordy v. Plimus*, No. 12-

4    0229, 2012 WL 2196128 (June 14, 2012) ("Plaintiff has alleged a uniform exertion of control on

5    the part of [defendant] over the misleading statements issued by all its affiliate retailers . . . and

6    therefore has demonstrated an actual, personal injury in fact that is fairly traceable to the

7    challenged actions of Defendant, and is likely to be redressed by a decision in Plaintiff's favor.").

8    The Supreme Court has noted, without clearly resolving, tension in the law in this area. *See Gratz*

9    *v. Bollinger*, 539 U.S. 244, 263 n.15 (2003) (declining to resolve whether variations in the factual

10    circumstances underlying plaintiffs' and absent class members' injuries "is appropriately addressed

11    under the rubric of standing or adequacy, we note that there is tension in our prior cases in this

12    regard.").

13        The Court finds that neither Juel nor Herskowitz can allege claims brought on behalf of

14    customers who bought products other than from the iTunes Store. First, because Juel's claims

15    sound in fraud, they are subject to a heightened pleading standard. However, Juel has not alleged

16    any specific facts, including the "who, what, when, and where," of any alleged fraud regarding

17    products purchased from the App Store, Mac App Store, or iBookstore. *But see Kearns*, 567 F.3d

18    at 1124. Second, the actual terms and conditions related to the downloading of songs from iTunes

19    appear to differ from those for iBookstore and the app stores. Notably the Terms and Conditions

20    that govern apps and books permit free redownloads. *See* Preovolos Decl. at AGMT00013

21    ("Solely as an accommodation to you, some Products may be redownloaded for use in accordance

22    with the usage rules."). Therefore, the core characteristic of the iTunes song purchases that Juel

23    argues injured her is not a characteristic of the other products. Given that it is doubtful that Juel

24    has alleged injury-in-fact that is substantially similar to the alleged harm of customers who

25    purchased products from the App Store, Mac App Store, or iBookstore, the Court finds that Juel

26    currently lacks standing to assert claims on behalf of customers who purchased products other than

27    from iTunes.

28

Likewise, to the extent that Herskowitz's claims stem from being charged twice after twice downloading a song off of iTunes, Herskowitz appears to lack standing to assert claims on behalf of customers who were permitted to redownload apps and iBooks from Apple's other e-stores. While Herskowitz may be able to represent customers who were charged twice for single purchases and downloads from the other e-stores, the Court declines to rule on this issue until Herskowitz has sufficiently pled factual allegations, in compliance with Rule 8(a)(2), that enable the Court to infer more than the mere possibility of Apple's misconduct. *Iqbal*, 556 U.S. at 679.[7]

Accordingly, the Court GRANTS Apple's Motion to Dismiss without prejudice based on Plaintiffs' failure to allege facts sufficient to state a claim and demonstrate standing regarding products they did not purchase.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Apple's Motion to Dismiss without prejudice, with the exception of Plaintiffs' unjust enrichment claim, which the Court dismisses with prejudice. Should Plaintiffs elect to file a Second Amended Consolidated Complaint curing the deficiencies discussed herein, they shall do so within 30 days of the date of this Order. Failure to meet the 30-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: April 15, 2013

LUCY H. KOH
United States District Judge

---

[7] Due to the deficiencies identified in Plaintiffs' claims, the Court DENIES Plaintiffs the right to obtain further discovery concerning transactions involving products purchased from the App Store, the iBookstore, and/or the Mac App Store until Plaintiffs have demonstrated that they have standing to assert claims for products that they did not purchase.

Case Nos.: 12-CV-02131-LHK; 12-CV-03124-LHK
ORDER GRANTING MOTION TO DISMISS